5 F.3d 535
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Maria Jose BRANTUAS, Personal Representative of the Estate
of Victor Brantuas, deceased, Plaintiff-Appellee,
v.
ODETTE THERESE FISHING CORPORATION, a corporation; Boat
Company Odette Therese, Inc., a corporation; Hornet
Corporation; Van Camp Seafood Company, a corporation,
Defendants-Third-Party Plaintiffs-Appellees,
v.
CAMPBELL INDUSTRIES, a corporation, Defendant-Third-Party
Defendant-Appellant.
 No. 92-55518.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 25, 1993.*
Decided Aug. 20, 1993.
 
 1
 Before: D.W. NELSON and REINHARDT, Circuit Judges; TANNER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 This wrongful death action stems from a maritime accident that resulted in the death of Victor Brantuas, husband of the plaintiff Maria Brantuas. Victor Brantuas was drowned after the chaseboat that he was travelling in with five other seamen became swamped. Previously, Mrs. Brantuas and third-party appellants Van Camp Seafood, Odette Therese and Hornet appealed from the district court's order finding that defendant-appellee manufacturers Campbell Industries and Nuttall-Styris, Inc., were not strictly liable under a products liability theory for the decedent's death. We remanded this case to the district court for a finding as to whether the particular use to which the boat was put on the night of the accident was reasonably foreseeable from the point of view of its ordinary customers. The district court found that the use was reasonably forseeable and that therefore the chaseboat was defective. Therefore, the court reversed its original order and ruled that Mrs. Brantuas should recover from Campbell and Nuttall-Styris. The district court's award of damages included an award for the loss of nurture and support from Victor Brantuas.
 
 
 4
 Campbell appeals the district court's findings of fact in regard to the accident. Campbell also asserts that the district court committed an error of law when it awarded Mrs. Brantuas damages for loss of her husband's nurture and future support. We review the admiralty trial court's findings of fact for clear error, and its conclusions of law de novo. Newby v. F/V Kristen Gail, 937 F.2d 1439, 1441-42 (9th Cir.1991); Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d 818, 822 (9th Cir.1988).
 
 
 5
 The district court heard testimony that although the chase boats were meant to be used by one or two people, frequently the boats were used to ferry six people at a time. On the basis of this evidence, it was not clearly erroneous for the district court to conclude that the chase boat was being put to a reasonably foreseeable use when it was being employed to ferry up to six seamen at a time from one tuna fishing vessel to another.
 
 
 6
 We also find no error regarding the district court's finding that the chaseboat was in a defective condition that made it unreasonably dangerous to its users. The court heard evidence that the chase boat had no instructions, warnings or labels setting forth the boat's maximum passenger capacity, or warning that in certain conditions seawater could enter through the open stern holes and swamp the boat. The court also heard evidence that it was possible to eliminate or at least reduce the dangerous condition by equipping the boats with flotational tanks to permit horizontal flotation when the boat was swamped, and/or by covering the port and starboard engine control rod openings in the transom and stern. No evidence was presented that suggested seamen were commonly aware that chaseboats with open holes were susceptible to swamping even when six passengers were aboard. This evidence supports the district court's findings concerning the condition of the chaseboat.
 
 
 7
 Campbell also contends that the district court erred in concluding that under general principles of maritime law, the Jones Act, 46 U.S.C. Sec. 688, or the Death on the High Seas Act ("DOHSA"), 46 U.S.C. Sec. 762, a widow of a seaman may recover for loss of her husband's nurture. We disagree. It is true that Congress has limited recoverable damages in wrongful death actions to pecuniary losses. 46 U.S.C. Sec. 762; Miles v. Apex Marine Corp., 111 S.Ct. 317, 325 (1990). A pecuniary loss is one that "can be measured by some standard." Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 71 (1913). However, the term, "as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband." Id. While the word "pecuniary" excludes those injuries to the affections which are immeasurable, it is possible that a widow who is deprived of some "service" of her husband that includes nurturing "elements [such as] 'care ' and 'advice ' " may indeed have suffered a pecuniary loss. Id. at 74 (emphasis supplied). Thus, damages for loss of nurture may be awarded if "the services of the decedent [to his spouse] constitu[ed] such care and advice" that could be "enumerated and their replacement value estimated." Petition of United States Steel Corp., 436 F.2d 1256, 1277 (6th Cir.1970), cert. denied, 402 U.S. 987 (1971). Hence, the district court did not err in concluding that Mrs. Brantuas was entitled to damages to the extent that her loss of the care and advice of her husband went to matters beyond maintenance and support and was capable of pecuniary measurement.
 
 
 8
 Campbell does not challenge the district court's factual findings in regard to Mrs. Brantuas loss of nurture. However, we agree with the district court that Mrs. Brantuas' loss of her husband's guidance and instruction concerning her "adjustment and assimilation" into this country constitutes a loss of care and advice that was tied to economic benefit. The decedent provided Mrs. Brantuas with skills that had an economic value insofar as her adjustment to the language and customs of this country will affect all areas of her financial life, from her ability to deal with the day-to-day aspects of financial management to her ability to obtain employment. This care and advice was also susceptible of measurement: the essentially educative service which Mrs. Brantuas' husband provided could have been supplied by another for compensation. Id. at 1278.
 
 
 9
 Finally, citing Miles, 111 S.Ct. at 327-28, Campbell argues that the district court erred in awarding Mrs. Brantuas damages for the loss of her husband's future earnings because such awards are not allowed in a maritime wrongful death action. Miles, however, dealt with two distinct issues which Campbell has conflated: first, Miles considered the types of damages recoverable in a maritime cause of action for wrongful death; second, the Court considered the type of damages recoverable in a maritime survival action. In regard to the latter cause of action, the Court held that even if a seaman's personal cause of action survives under general maritime law, income he would have earned but for his death is not recoverable under either DOHSA or the Jones Act. Id. at 327-28. Miles, however, did not find that Congress had displaced the general maritime cause of action for wrongful death which allows dependents to recover for their loss of support. Id. at 324. The Court recognized the irony that since "the support dependents lose as a result of a seaman's death would have come from a seaman's future earnings," often "recovery of lost future income in a survival suit will ... be duplicative of recovery by dependents for loss of support in a wrongful death action." Id. 327. Nevertheless, loss of support and loss of earnings are two distinct forms of damages that result from two distinct causes of action. Indeed, the Supreme Court partially refused to allow recovery for lost earnings in a survival action because such an award would be duplicative of a support award, which is allowed in a wrongful death action. Id. at 327.
 
 
 10
 In this instance, and contrary to Campbell, the district court did not award damages for the loss of future earnings. Rather, the district court awarded Mrs. Brantuas damages for her loss of support from her husband (ER at 352). The damage award was not based on a gross figure representing the decedent's future wage loss, but on an adjusted figure which reflected the district court's judgment about the decedent's likely contribution to the support of his family. This adjusted amount took account of the present value of the decedent's projected personal consumption and income taxes.[1] While the district court's initial findings of fact, which were prepared by Campbell, mistakenly characterized the award as damages for future loss of earnings (ER at 7), this mistake was rectified. The amended order clarified that the damage award was for loss of support (ER at 352).
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Campbell does not challenge the methodology employed to arrive at the amount of loss of support damages. Rather, Campbell argues only that this damage award is not really an award for "loss of support."